Albert A. Blinder, J.
This is a claim for the partial appropriation of claimant’s land pursuant to section 30 of the Highway Law, in a proceeding described as Castleton-Rensselaer, Part 2, S. H. No. 1115, Rensselaer County.
The property is shown as Parcel No. 59 on Map No. 38 which was filed in the Rensselaer County Clerk’s .office on May 28, 1970. Notice of the appropriation was personally served on June 9, 1970.
*662 The claim /was timely filed on November 12, 1971 and has not been submitted to any other court or tribunal for audit or determination.
By order of this court dated November 8,1972, the caption has been amended to read as above indicated.
Adopted as accurate are the descriptions of the appropriated property as shown on the map and descriptions filed in the Rensselaer County Clerk’s office, copies of which are attached to the claim and the same are herein incorporated by reference.
The court has viewed the property which is the subject of the claim at bar.
Proof of ownership of the property was established by a deed dated April 13, 1929 from Porter L. Howard and his wife, M. Katheryn Howard, to the Sun Oil Company, claimant’s predecessor in title prior to merger.
The claimant utilized its property as a “ tank farm ’ ’ for the storage of heating oil. The oil was delivered by barges brought up the Hudson River from refineries to various tanks of the Sun Oil Company :which were situated on other land owned[1] by -the claimant adjacent to the river. Once received in the tanks, the oil was then pumped underground for over a mile under the New York Central Railroad tracks and under Route 9J to the claimant’s storage tanks on the east side of the road. The area of claimant’s land adjoining the east side of Route 9J is the area which was appropriated by this taking. The land affected was hilly in grade, rising in contour from its lowest at the road to its highest where the claimant had constructed three tanks to receive and store the oil pumped from the other tanks near the river. The cost-to-cure damages allegedly sustained by the claimant due to the appropriation concern the tanks on the east side of Route 9 J.
Prior to the appropriation, the claimant’s original parcel consisted of 23.879 acres which, in addition to the three tanks, was improved by a two-story frame 'dwelling, three barns, and other land improvements.[2] The taking appropriated an area of 3.041 acres in fee consisting of a rectangular strip with 1,306 foot frontage on Route 9J.
*663 Both appraisers agree that prior to the appropriation the highest and best use of the entire property was as a “ tank farm ” as used in conformance with the existing zoning laws.
The State’s appraiser found no change in the highest and best use after the taking. The claimant’s appraiser ventured that there was a change in the after use.
The court finds that there has been no change in the highest and best use of the remainder.
The cross-examination of the claimant’s expert indicated that his hypothesis of a change was not based on fact. He testified that ‘ ‘ the highest and best use is as stated there, at the time of the taking,” and after the taking he agreed that the use would be the same but ‘[6] it could develop that later on a higher and better use could be found for it.”
The law requires more to establish an asserted highest and best use than a mere speculative or hypothetical arrangement in the mind of a claimant. (Matter of City of New York [Shorefront High Schoot-Rudnick], 25 N Y 2d 146; Triple Cities Shopping Center v. State of New York, 26 A D 2d 744, affd. 22 N Y 2d 683.)
The claimant’s expert found a consequential damage based on what he believed to be a loss of access to the remainder. His appraisal stated ‘[1] the only access is now by a right of way over a traverse road up the hill. This has eliminated any future division of the subject property into parcels with road frontage. This condition has in the opinion of the appraiser, made the property less flexible and less desirable and therefore less valuable by the restriction of future uses.” On this hypothesis, the claimant’s appraiser reduced the value of the remainder by 50%.
It is true that there has been a change in the grade of the bank of the property adjoining Route 9 J. It is not true that the access provided after the partial appropriation is unsuitable to the highest and best use of the remainder. The State has reconstructed an access road to the claimant’s remainder which is suitable to its unchanged highest and best use.
The access provided by the State is suitable to the use to which it is being put. Suitability of access is related to the highest and best use of the property (Priestly v. State of New York, 23 N Y 2d 152,156) and is a question of fact for the court. (Slepian v. State of New York, 34 A D 2d 880, 881.)
Since the court finds no severance damage to the remainder or consequential damage due to a change in the highest and best *664 use, the court will only find the direct damages incurred and those elements of the cost to cure[3] the removal and relocation of the pipes which were located under the bed of Route 9J.
In arriving at a land value for the appropriated land, both appraisers attempted to utilize sales of land having similar uses. The sales were of parcels either actually used by oil companies or adaptable in the appraisers ’ opinions to oil company use.
DIRECT DAMAGES
Claimant’s Sale No. 1 has not been considered by the court as a comparable since it occurred some 13 years prior to the title vesting date.
Claimant’s Sale No. 2 took place four years prior to the date, of appropriation. Claimant’s Sale No. 3 was three years prior to appropriation. Both involved land which had river frontage. The claimant’s appraiser made negative 30% adjustments to both sales in comparing them; to the subject parcel. His explanation of these adjustments when asked by the court indicated that they were made subjectively. The claimant’s expert did not research the land values in the vicinity to verify his adjustment for river frontage and conceded that ‘ ‘ the river frontage was very important.” We agree. While Sun Oil had other land fronting on the river on which oil was received and stored, it thereupon had to be pumped under the New York Central Railroad tracks and the intervening Route 9J to the land which was affected by the taking. The sales utilized by claimant were of parcels located between the Hudson River and Riverside Avenue. While these sales are not the best comparables to find a land value for the subject, because of an apparent dearth of better comparables they have been considered by the court. In so considering them, the court finds it necessary to increase the adjustment for river frontage to a minus 50%, which would indicate a value of $3,200 an acre.
The State’s appraiser utilized three sales. Sale B-780 was for an area almost identical to the subject and also had, as the subjéct has, frontage on Route 9J. As adjusted by the State’s expert, it indicated $628 an acre.
State’s Sale B-784 was zoned residential-agricultural. The subject’s zoning was of greater utility. As adjusted by the State’s appraiser, this sale indicated $1,000 an acre. Sale B-644 involved 38 acres which had river frontage. The cross-examina *665 tion pertaining to this sale indicates that there was a title question involving access to the sale. As adjusted, this sale indicated a value of $1,260 an acre. Based on all sales, the defendant’s appraiser valued the subject at $1,260 an acre.
Based on all the evidence, the court finds a value of $1,750 an acre for the property taken, for a total of $5,322.
COST TO CUBE
At the outset, the court must decide the issue of whether the claimant had the right to have its pipes under the bed of Route 9J. The defendant has given its appraiser legal instructions that no cost-to-cure damages are compensable for the expense incurred by the claimant in replacing and installing the piping disturbed by the taking. The State argued at the trial that the claimant never had a permit to put the pipes under Route 9J and therefore had no right to construct the original pipes which were disturbed by the instant taking.
The evidence clearly established that the subterranean pipes were in existence for many years prior to the appropriation. The defendant’s expert testified that he called the Department of Transportation of the State of New York and requested a search of their records regarding whether or not the claimant had a permit, license or easement to place the pipelines under the State Highway. He testified that he was told that none existed.
The Assistant Attorney-General requested at the trial that he be permitted to submit an exhibit after the close of trial for a taking map or maps allegedly filed subsequent to claimant’s deed, Exhibit No. 3, which were proof that the State had appropriated the bed of Route 9 J prior to the instant highway widening proceeding. As stipulated by the parties herein, Exhibit C has now been submitted. In his transmittal letter, dated May 28, 1974, the Assistant Attorney-General stated: “ I have reluctantly come to the conclusion that these maps do not affect the ¡Sun Oil Company property in the area traversed by the pipeline.” He goes on to say: “ thus it would appear that the pipeline crossing lies between the two areas covered by the maps.” The court has marked this letter as a court exhibit, Exhibit A.
Claimant’s deed, Exhibit No. 3, conveyed five parcels. The descriptions of the parcels are referenced to archaic landmarks and the areas conveyed are otherwise not easily discernible without a survey.
*666 The court finds that the deed encompassed within its conveyance the bed of River Road (which is now known as Castleton Road and designated Route 9J)[4].
The State, relying on the authority of Ashland Oil & Refining Co. v. State of New York (26 N Y 2d 390), argues that lacking a permit, the claimant cannot recover for the relocation of the pipes. The Ashland case is distinguishable by virtue of the existence in Ashland of a permit issued under section 149 of the Highway Law, which by its very terms required the permittee to remove the pipes at its own expense. (Ashland, supra, pp. 394-395.)[5]
In Ashland the claimant obtained easements from the abutting owners (whose title extended to the center line of the road) permitting installation and maintenance of the pipeline under the roadbed and then applied for a permit as aforesaid. (Ashland, supra, p. 392.)
In the case at bar, the claimant was the abutting owner, as well as fee owner of the road. The general rule is that the owner of the fee of highway has the right to use the subsurface thereof for any proper purpose incident to the use and enjoyment of the abutting premises, provided it does not thereby materially interfere with the enjoyment of the public easement.[6] There was no evidence of any such interference in the case at bar. (McCarthy v. City of Syracuse, 46 N. Y. 194; 26 New York Jur., Highways, Streets and Bridges, § 208; Cf. Heyert v. Orange & Rockland Utilities, 17 N Y 2d 352.)
There is no evidence in this claim that at the time of the construction the road was operated by a town or municipality which would have required a permit under section 149 of the Highway Law. (Town of Amherst v. Tide Water Oil Sales Corp., 241 App. Div. 912.) The evidence also fails to indicate that at the time of the construction of the original pipeline there was a requirement for a permit under section 52 of the Highway *667 Law; nor is there any indication that the pipes were placed under the road subject to conditions imposed or imposable by the holder of a public easement, if such easement existed prior to April 13, 1929, the date of claimant’s acquisition of the fee, either by appropriation proceeding or by operation of law. The record below in Ashland indicates that the State introduced a certified copy of the town records, as well as a history of the road which interpreted the survey. No such proof was elicited at bar by the defendant. As a matter of law, the court finds that the defendant failed to prove its contention that a permit was necessary and the claimant is therefore entitled to recovery for the cost-to-cure damages sustained in removing and relocating his pipelines.[7]
In the record below in Ashland, the State acknowledged the liability for the costs of relocating the pipelines outside the roadway limits, but refused payment for relocating the pipelines that were in the road bed. (See Ashland Oil d Refining Co. v. State of New York, Ct. of Claims, Sept. 29, 1965.) In the case at bar, the valuation for relocating the pipe underneath the highway appropriated is de minimis; it is the costs incurred due to the reconstruction and replacement of the pipe outside the roadway which were causally necessitated by the appropriation that are in issue. (Cf. Tennessee Gas Transmission Co. v. State of New York, 32 A D 2d 71, affd. 27 N Y 2d 608; also, see, Klein v. State of New York, 19 A D 2d 569.)
The evidence indicates that the new pipelines were. required because of the change in grade, bank and direction of the pipes. This item is compensable and cost the claimant $47,310. We also find the cost of $3,360 for a new firewall to be compensable. All the other expenses are noncompensable because they áre either ordinary maintenance charges or upgrading of existing equipment not'necessitated by the instant proceeding.
The claimant is entitled to recover $5,322 for the value of the land appropriated, plus cost-to-cure damages of $50,670, for a total judgment of $55,992, with appropriate interest thereon from May 28,1970 to November 28,1970 and from November 12, 1971 to the date of entry of judgment herein.

. This other property was not considered in assessing damages herein by either appraiser.

. The house was occupied by an employee of Sun Oil. The other structures and improvements are not relevant in assessing damages except as later discussed herein.

. The claimant withdrew at trial claims for damages allegedly sustained by business interruption and for the installation of a guardrail.

. There is language contained in the deed which might lead one to believe that it is exclusive of “ the public highway.” This exclusion, however, is applicable Only to the approximation of the acreage contained in one of the five parcels conveyed. The deed does contain affirmative language in another parcel description conveying to “the center line of the River Road.”

. It should be noted that in Ashland the permittee acknowledged the conditions by applying for the permit and thereafter bound itself contractually by signing the conditional permit.

. The Court of Appeals in Ashland held that on the facts in that case (p. 394), “the construction and maintenance” of the oil pipeline affected “the town’s operation of the highway.”

. The relocation was made pursuant to the issuance of a permit granted after the taking.